UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MATTHEW L. SPEIGHTS
a/k/a MATHEW LAMONT SPEIGHTS,

      Petitioner,

v.                              Case No.  5:13cv53/RS/CJK

JULIE L. JONES,[1]

      Respondent.

_____/

ORDER and
REPORT AND RECOMMENDATION

      Before the court is a petition for writ of habeas corpus filed under 28 U.S.C.
§ 2254 (doc. 1).  Respondent filed an answer (doc. 14), submitting relevant portions
of the state court record (doc. 15).  Petitioner replied (doc. 18).  The matter is referred
to the undersigned magistrate judge for report and recommendation pursuant to 28
U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues
raised by petitioner, the undersigned concludes that no evidentiary hearing is required
for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254
Cases in the United States District Courts.  The undersigned further concludes that

_____

      [1]Julie  L. Jones succeeded Michael D. Crews as Secretary of the Florida Department of
Corrections, and is automatically substituted as the respondent.  Fed. R. Civ. P. 25(d).

the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged with the sale, delivery, or possession with intent to sell or deliver cocaine within 1,000 feet of a public school between the hours of 6:00 a.m. and 12 midnight, in Calhoun County Circuit Court Case Number 08-CF-12. (Doc. 15, Ex. A).[2] Petitioner went to trial (Ex. B), and a jury found him guilty as charged. (Ex. B, p. 140; Ex. C). By judgment rendered March 25, 2008, petitioner was adjudicated guilty and sentenced to fifteen years imprisonment with a three-year mandatory minimum. (Ex. B, pp. 145-46; Ex. G). Petitioner's judgment of conviction was affirmed on direct appeal, per curiam and without a written opinion, on May 29, 2009. *Speights v. State*, 9 So. 3d 621 (Fla. 1st DCA 2009) (Table) (copy at Ex. K).

On December 8, 2009, petitioner filed a counseled motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. M). On March 8, 2010, the state circuit court struck the motion as facially insufficient with leave to amend within thirty days. (Ex. N). Petitioner, through counsel, filed an amended motion on March 19, 2010 (Ex. O), and a second amended motion on April 30, 2010, raising three grounds of ineffective assistance of trial counsel (Ex. P). The state circuit court summarily denied relief on Grounds One and Three (Ex. Q), and held an evidentiary hearing on Ground Two (Ex. U). The evidentiary hearing was held January 20, 2011. (Ex. U). Petitioner was represented by counsel. (*Id.*). Following the hearing, the

---

[2]All references to exhibits are to those provided at Doc. 15, unless otherwise noted. If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

circuit court denied relief on Ground Two in a written order.  (Ex. V, pp. 203-207).
Petitioner was appointed counsel for his appeal.  (Ex. V, p. 226).  On October 20,
2011, the Florida First District Court of Appeal ("First DCA") summarily affirmed,
per curiam and without a written opinion.  *Speights v. State*, 72 So. 3d 754 (Fla. 1st
DCA 2011) (Table) (copy at Ex. AA).  The mandate issued November 15, 2011.  (Ex.
BB).

On August 22, 2011, petitioner filed a *pro se* petition for writ of habeas corpus
in the Calhoun County Circuit Court.  (Ex. CC).  The petition was dismissed as
procedurally barred on October 10, 2011.  (Ex. DD).  Petitioner did not appeal.  (Ex.
EE).

On October 31, 2011, petitioner filed a *pro se* motion to vacate sentence under
Florida Rule of Criminal Procedure 3.800(a).  (Ex. FF).  The state circuit court denied
the motion on December 30, 2011.  (Ex. GG).  The First DCA per curiam affirmed
on August 7, 2012, citing *State v. Adkins*, 96 So.3d 412 (Fla. 2012).  *Speights v. State*,
94 So. 3d 654 (Fla. 1st DCA 2012) (Table) (copy at Ex. HH).  The mandate issued
September 5, 2012.  (Ex. II).

While that postconviction proceeding was pending, petitioner filed another
Rule 3.850 motion for postconviction relief, this time *pro se*.  (Ex. JJ).  The motion
was summarily denied on October 19, 2012.  (Ex. KK).  Petitioner did not appeal.
(Ex. EE).

On October 12, 2012, petitioner filed a *pro se* petition for writ of habeas corpus
in the Florida Supreme Court.  (Ex. LL).  The petition was dismissed on January 14,
2013, with the explanation:  "the Court has determined that relief is not authorized,"
citing *Baker v. State*, 878 So. 2d 1236 (Fla. 2004).  (Ex. LL).

On April 11, 2013, petitioner filed a *pro se* motion for reduction of sentence under Florida Rule of Criminal Procedure 3.800(c).  (Ex. MM).  The state circuit court denied the motion on May 10, 2013.  (Ex. NN).  Petitioner did not appeal.  (Ex. EE).

Petitioner filed his federal habeas petition in this court on February 14, 2013. (Doc. 1).  The petition raises three claims, all alleging ineffective assistance of trial counsel.  Respondent asserts petitioner is not entitled to federal habeas relief, because the state courts' rejection of his claims was not contrary to or an unreasonable application of clearly established federal law, and did not involve an unreasonable determination of the facts.  (Doc. 14, pp. 40-50).

## APPLICABLE LEGAL STANDARDS

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47, 130

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when

the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate

court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

<u>Clearly Established Federal Law Governing Claims of Ineffective Assistance of Trial Counsel</u>

In *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance claims. The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner. *Id.*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."

*Strickland* at 690, 104 S. Ct. at 2066. "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694, 104 S. Ct. at 2068. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was

unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788.

As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly
> deferential," and when the two apply in tandem, review is "doubly" so.
> The *Strickland* standard is a general one, so the range of reasonable
> applications is substantial.  Federal habeas courts must guard against the
> danger of equating unreasonableness under *Strickland* with
> unreasonableness under § 2254(d).   When § 2254(d) applies, the
> question is not whether counsel's actions were reasonable.  The question
> is whether there is any reasonable argument that counsel satisfied
> *Strickland*'s deferential standard.

*Id.* (citations omitted).

## DISCUSSION

Ground One          "Ineffective assistance of trial counsel for failing to call witness
                    who would testify that defendant did not participate in drug
                    transactions." (Doc. 1, p. 5).[4]

Petitioner claims he informed defense counsel (Dennis Boothe) that his co-
defendant Darren Jackson would testify that he (petitioner) had nothing to do with the
drug deal forming the basis of his conviction.  (Doc. 1, p. 5).  Petitioner alleges
defense counsel set up two appointments with Mr. Jackson prior to trial, but defense
counsel failed to show up for either appointment even though Mr. Jackson appeared
for both meetings.  (*Id.*).  Petitioner complains that counsel made no attempt to
interview Jackson or contact Jackson's counsel "to get his consent" for Jackson to
testify at petitioner's trial.  (*Id.*).  Petitioner alleges the jury could have had reasonable
doubt about his guilt had Jackson testified.  (*Id.*).  Petitioner asserts he raised this
claim in his Rule 3.850 motion.  (*Id.*, p. 6).

---

[4]References to page numbers of the petition are to those enumerated by the electronic docket.

Respondent concedes petitioner exhausted this claim.  (Doc. 14, p. 40).
Respondent asserts petitioner is not entitled to federal habeas relief, because the state
courts' adjudication of the claim was not based on an unreasonable determination of
the facts, nor was it contrary to, or an unreasonable application of, the *Strickland*
standard.  (*Id*., pp. 41-46).

Petitioner's postconviction counsel presented this issue as Ground Two of
petitioner's second amended Rule 3.850 motion.  (Ex. P, p. 10).  The state circuit
court denied relief on the merits as follows:

> In Ground 2, Defendant alleges that counsel was ineffective when
> he failed to call a key witness for the defense.  Specifically, Defendant
> submits that Darren Jackson would have testified that the Defendant
> never possessed nor participated in the sale of cocaine.  Further, this
> witness would have contradicted the testimony of the State's witnesses
> and corroborated the Defendant and the witnesses for the defense.
> Accordingly, Defendant alleged a prima facie case sufficient to warrant
> a response by the State and a subsequent evidentiary hearing.  *See*
> *Leftwich v. State*, 954 So. 2d 714 (Fla. 1st DCA 2007).
>
> On January 20, 2011, the Court held an evidentiary hearing and
> considered the testimony of the following witnesses:  Darren Jackson;
> the Defendant Matthew Speights; Wade Mercer, Esq., trial counsel for
> Darren Jackson; and former assistant state attorney Matt Wilson, Esq.,
> who prosecuted both the Defendant at his trial and represented the State
> of Florida against Darren Jackson in separate Calhoun [C]ounty criminal
> cases.
>
> Witness Darren Jackson (DOC# 130426) is a convicted felon
> currently serving a 42 month prison sentence at Jefferson Correctional
> Institution related to two (2) charges of Sale of a [sic] Crack Cocaine
> within 1000 feet of a School in Calhoun County case numbers 08-01 and
> 08-02 CF.  Boiled down to its essence, the witness testified that he, and
> not Matthew Speights, was the one who transacted the sale of drugs to

the undercover officer and/or confidential informant in the above styled case.   Further, Mr. Jackson testified that he was present at the courthouse for Speights' trial and told counsel, Dennis Boothe, that he was willing to testify on behalf of Speights' [sic] and tell the jury that he (Speights) was not involved in the transaction.   However, Darren Jackson made a statement that suggested that he didn't have his trial counsel's approval to be in court to testify while he had pending charges in Calhoun County, Florida.   Further, Darren Jackson stated that the recorded statement he made to the prosecutor with trial counsel present was forced and a lie.   Further, he testified that he had discussed the facts of the case with Mr. Mercer (Jackson's attorney) and he never told Mr. Mercer that Matthew Speights was involved in the drug sale.   In fact, he testified that Mr. Mercer knew that Speights was innocent related to the drug sale charge in the above styled case.

Second, the Court heard and considered testimony from the Defendant at the evidentiary hearing.   During his testimony, he stated that he was not involved in the drug transaction with Darren Jackson, when he sold drugs to the undercover officer and the confidential informant.   The Defendant also stated that he knew what Darren Jackson would say and told him to speak with his attorney, Dennis Boothe.   Defendant also testified that he asked Dennis Boothe to call Darren Jackson to testify at trial, but that his attorney did not give a reason for his failure to call Jackson as a witness.

Third, Darren Jackson's attorney, Wade Mercer, testified as a witness at the evidentiary hearing.   Mr. Mercer stated that he never discussed with his client about Darren Jackson testifying at the Defendant's trial until he got a phone call during the Matthew Speight's [sic] trial.   Mr. Mercer also stated that his client never told him that the Defendant (Matthew Speights) was not involved in the crime.   In fact, Darren Jackson told him and the prosecutor in a statement, that it was Darren Jackson's dope; that Matthew Speights went to get the dope out of the car and handed it to him and Darren Jackson sold it to the undercover officer; but it was Darren Jackson's dope.   Based upon the foregoing, counsel testified that [he] would not have recommended

Darren Jackson to testify.  In essence, his client would be writing his own sentence if he testified at Defendant's trial.

Mr. Mercer also testified and elaborated more upon the recorded under oath statement made by his client, Darren Jackson, to the prosecutor, which occurred after Matthew Speights' trial but before sentencing of the Defendant.  According to Mr. Mercer, there were no threats made to induce and/or coerce his client to speak freely about the events that occurred during the drug sale and Matthew Speights' involvement.  The plea offer to Darren Jackson was 48 months DOC[;] if he testified truthfully prior to sentencing, 42 months DOC with a 3 years minimum mandatory.  However, Darren Jackson wanted the 48 months DOC and not testify against Defendant Speights because he was afraid of him and that is what he [Jackson] wanted to do.  But, according to Mr. Mercer, the judge was not inclined to accept or sentence Darren Jackson to 48 months DOC pursuant to the State's plea offer.  Rather, counsel stated that if Darren Jackson plead [sic] straight up, his client would probably do more than 48 months imprisonment because the sentence seemed too low according to [the] judge.  Ultimately, Darren Jackson did provide a truthful statement to the prosecutor about Defendant Speights' involvement in the drug sale, which resulted in him receiving the State's plea offer of 42 months DOC.  In Mr. Mercer's opinion, his client's version of events in the taped statement to the prosecutor was consistent with what the truth was in the drug sale and Defendant Speight's [sic] involvement based upon his preparation for trial and through depositions.

Fourth, Matt Wilson, the prosecutor in the case against both Matthew Speights and Darren Jackson, testified at the evidentiary hearing.  According to Mr. Wilson's recollection of events, Darren Jackson was here in the courtroom the day of Defendant Speights' trial about halfway into the trial.  During the trial of Defendant Speights, Dennis Boothe informed Mr. Wilson that he was going to potentially call Darren Jackson as a witness at Speights' trial.  But, Mr. Wilson testified that he told Dennis Boothe that Darren Jackson was represented by Mr. Mercer, [and] that he needed to talk with Mr. Mercer about his

client being a potential witness.  Dennis Boothe didn't talk with Mr. Mercer, but it was relayed to Mr. Wilson that Darren Jackson was not going to testify after a phone call with Mr. Mercer.  Based upon the foregoing, the Court was informed that Darren Jackson was represented by counsel and he had current pending charges, which resulted in Darren Jackson not being called as a witness at trial.

Mr. Wilson also testified about the circumstances surrounding the statement by Darren Jackson.  It appeared as though Jackson was going to take the fall for Defendant Speights even after he [Speights] was convicted at a jury trial.  Wilson told Mr. Mercer that he was not willing to [m]ake [a] plea offer with Darren Jackson[,] [without Jackson] telling me [the] truth about what happened, when Mr. Wilson knew based upon his knowledge of the case that Defendant Speights was an active participant in the drug sale with the undercover officer and confidential informant.  During the taped statement, which was sworn and under oath, the prosecutor did ask Darren Jackson about Defendant Speights['] involvement.  Darren Jackson did admit that the Defendant Speights was actually involved in the drug sale transaction and that he (Speights) knowingly handed the drugs to him.  In fact, Darren Jackson's taped statement, in the prosecutor's opinion, was consistent with the trial testimony at Defendant Speights' trial.  Therefore, Darren Jackson received the benefit of 42 month prison sentence for testifying truthfully in his taped statement to the prosecutor and trial counsel, Wade Mercer.  As for any coercion or threats to obtain Darren Jackson's testimony in the taped statement, Mr. Wilson stated that there was no threat or inducement involved.  He would only state that Darren Jackson was looking at a [sic] two first degree felonies punishable by up to thirty years each for a total of sixty years in prison.

Based upon the foregoing facts and testimony from the above witnesses, the Court finds that this case boils down to the credibility and truthfulness of the witnesses involved.  After reviewing the testimony of the evidentiary hearing and the trial transcript, the testimony of both Mr. Mercer and Mr. Wilson are more compelling and truthful especially in light of both attorney's [sic] comments concerning the [sic] Darren

Jackson's taped and sworn testimony which implicated Matthew Speights' involvement and/or participation in the drug sale.  In addition, the sworn taped testimony of the [sic] Darren Jackson is more credible and in line with the facts and testimony presented at Defendant Speights' trial.  (*See* Trial Transcript attached to Court's previous Order Denying In Part Second Rule 3.850 Motion and Order Directing State to Respond filed August 11, 2010).  Further, the Court finds that the [the] Darren Jackson's statements at the evidentiary hearing that he was coerced into providing a taped statement implicating Matthew Speights in the drug sale[,] and the statement was a lie[,] is hard to believe considering he received the benefit of a generous plea bargain when he faced a potential punishment of sixty years imprisonment.  Moreover, Mr. Mercer's comments about Darren Jackson being fearful of testifying against Defendant Speights lends further support to the truthfulness of Darren Jackson's taped statement which occurred after the [sic] Defendant Speights was convicted at trial.  Finally, Defendant's own trial testimony states that he didn't remember if he ever retrieved a pill bottle full of dope and give [sic] it to Darren Jackson to give to the undercover officer when the prosecutor asked him at his trial. (*See* Trial Transcript attached to Court's previous Order Denying In Part Second Rule 3.850 Motion and Order Directing State to Respond filed on August 11, 2010 at pg. 96).  But, the undercover officer testified that she was within approximately ten feet of viewing the Defendant retrieving the pill bottle out of the glove box of the car and handing it to Darren Jackson.  Then, Darren Jackson poured about 10 or 15 pieces of illegal substance out of the pill bottle into the undercover officer's hand before she was sold $40 dollars of crack cocaine.  Moreover, the undercover officer testified how she picked both the Defendant and Darren Jackson out of a photographic lineup, which was introduced at trial as State's Exhibit 3 and 4.  (*See* attached Trial Transcript to Court's earlier Order Denying In Part Second Rule 3.850 Motion and Order Directing State to Respond filed August 11, 2010 at pp. 27-42).

In any case alleging ineffective assistance of counsel, the convicted defendant must show two things, (1) that counsel's performance was so deficient that it fell "outside of the broad range of competent performance under prevailing professional standard[s]," and

(2) that counsel's deficient performance prejudiced him to such an extent that had counsel performed effectively, the outcome of the proceeding would have been different.  *See Peterka v. State*, 890 So. 2d 219, 228 (Fla. 2004); *Strickland v. Washington*, 104 S. Ct. 2052 (1984).

The standard for evaluating counsel's performance is that of "reasonable effective counsel".  *See Strickland*, 104 S. Ct. at 2052; *Miller v. State*, 921So. 2d 816, 819 (Fla. 5th DCA 2006).  Reasonable effective counsel does not mean perfect counsel, but rather is an objective standard.  *See id.*  Further, a defendant must show beyond mere speculation that there is a reasonable probability that but for counsel's errors the outcome of the proceeding would have been different.  *See Peterka v. State*, 890 So. 2d at 228.  The convicted defendant bears the burden of proof for each element of the *Strickland* test, and if he is unable to satisfy either prong of the test, then relief should be denied.  *See Strickland*, *supra*.

Applying these standards to the present case, the Court finds that the Defendant has failed to establish that counsel's performance was deficient, nor [sic] that Defendant was prejudiced by counsel's performance.  Defendant has failed to show a specific act or omission that was a substantial and serious deficiency measurably below that of competent counsel.  Moreover, the Defendant has failed to show a deficiency so substantial as to probably have affected the outcome of the proceedings.  Finally, Defendant has failed to affirmatively prove prejudice.  As a result, the Court finds that the Defendant did not receive ineffective assistance of counsel as he asserts throughout his motion.

(Ex. V, pp. 203-07).  The First DCA summarily affirmed.  (Ex. AA).

Petitioner contends the state court applied the wrong legal standard because (1) the state court determined that counsel was "reasonably effective" where the proper standard is whether counsel's representation fell below an objective standard of reasonableness (doc. 18, p. 5), and (2) the state court required him to show that the outcome of the proceeding would have been different had counsel performed

effectively, where the correct standard is a reasonable probability of a different outcome (*id.*, pp. 6-7).

The state court's decision is not contrary to *Strickland*.  Petitioner first takes issue with the state court's determination that counsel was "reasonably effective," arguing that the proper standard is whether counsel's representation fell below an objective standard of reasonableness.  (Doc. 18, p. 5).  Petitioner's assignment of error is frivolous.  The Supreme Court interprets *Strickland* as holding that "criminal defendants have a Sixth Amendment right to 'reasonably effective' legal assistance." *Roe v. Flores-Ortega*, 528 U.S. 470, 476, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000) (*quoting Strickland*, 466 U.S. at 687)); *see also Blankenship v. Hall*, 542 F.3d 1253, 1272-73 (11th Cir. 2008) ("All that a defendant at trial is entitled to is reasonably effective assistance; therefore, the petitioner must show his counsel's representation fell below some objective standard of reasonableness.") (*citing Strickland*, 466 U.S. at 688)).  This is precisely the standard the state court applied in petitioner's case.

Petitioner next argues the state court erroneously required him to show that the outcome of the proceeding would have been different had counsel performed effectively, where the correct standard is a <u>reasonable probability</u> of a different outcome.  (Doc. 18, pp. 6-7).  Petitioner is correct that in one part of the state court's written opinion, the court stated the prejudice standard as requiring a defendant to show "that counsel's deficient performance prejudiced him to such an extent that had counsel performed effectively, the outcome of the proceeding would have been different."  In the very next paragraph, however, the state court correctly articulated the standard as requiring a defendant to show "beyond mere speculation that there is a reasonable probability that but for counsel's errors the outcome of the proceeding would have been different."  The state court later concluded that petitioner "failed to

show a deficiency so substantial as to probably have affected the outcome of the proceedings." Although the state court may have misstated the prejudice standard in one part of its opinion, the court's subsequent correct and consistent restatements of *Strickland*'s prejudice standard elsewhere in the opinion, and more importantly its correct application of *Strickland*'s prejudice standard, entitles the opinion to deference under the AEDPA. *Holland v. Jackson*, 542 U.S. 649, 655, 124 S. Ct. 2736, 2739, 159 L. Ed. 2d 683 (2004) (holding that the state court did not act contrary to federal law under *Strickland* when it referenced the defendant's burden to prove counsel's ineffectiveness by a preponderance of the evidence rather than a reasonable probability standard; the state court recited the correct *Strickland* standard in one part of its opinion, and such interpretation of other passages within the opinion would create internal inconsistency within the opinion and would run counter to § 2254's requirement that state court decisions "be given the benefit of the doubt. . . . Readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." (internal quotation marks and citation omitted)); *see also id*. at 655 (holding that state court's "use of the unadorned word 'probably' is permissible shorthand when the complete *Strickland* standard is elsewhere recited"); *Woodford v. Visciotti*, 537 U.S. 19, 23-24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (holding that state court's occasional shorthand reference to *Strickland*'s prejudice standard by use of the term "probable" without the modifier "reasonably" "was perhaps imprecise, but was no more a repudiation of the *Strickland* standard than the Supreme Court's "own occasional indulgence in the same imprecision"; further holding that the federal court erred when it "made no effort to reconcile" the state court's use of the term "probable" with its use, elsewhere, of a correct articulation of *Strickland*'s prejudice standard); *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1333

(11th Cir. 2005) ("In order to merit AEDPA deference the state court need not expressly identify the relevant Supreme Court precedent, <u>nor make a perfect statement of the applicable rule of law</u>, nor provide a detailed opinion covering each aspect of the petitioner's argument.") (emphasis added); *see also Ventura v. Attorney Gen., Fla.*, 419 F.3d 1269, 1285 (11th Cir. 2005) (holding that a state court's decision is entitled to deference and is not contrary to clearly established Supreme Court precedent where the court understood the law and applied it correctly, even though it may have misstated it).  The state court's rejection of petitioner's claim was not contrary to *Strickland*.

Petitioner additionally contends the state court unreasonably determined the facts when it assessed the credibility of Mr. Jackson's proposed trial testimony.  (Doc. 18, pp. 5-6).  Petitioner maintains the credibility of Jackson's testimony was for the jury to determine.  (*Id.*, p. 6).

The credibility of witnesses who testify at state postconviction evidentiary hearing are factual determinations properly made by the circuit court judge.  *See* Fla. R. Crim. P. 3.850.  A state court judge's credibility determinations are entitled to deference on federal habeas review.  The Eleventh Circuit has emphasized:

> Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.  Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  *Marshall v. Lonberger*, 459 U.S. 422, 103 S. Ct. 843, 851, 74 L. Ed. 2d 646 (1983).  We consider questions about the credibility and demeanor of a witness to be questions of fact.  *See Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999) (en banc).  And the AEDPA affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

*Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011); *see also Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while a reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (*citing Rice v. Collins*, 546 U.S. 333, 341–42, 126 S. Ct. 969, 163 L. Ed. 2d 824 (2006) (stating that "[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")).

Petitioner has not overcome with clear and convincing evidence the presumption that the state court's credibility determinations are correct.  The undersigned has carefully reviewed the state court's factual findings in light of the state court record, and concludes they are reasonable.  The most significant factual finding addressed the testimony of Mr. Mercer (co-defendant Jackson's counsel in Jackson's state criminal proceedings) and Mr. Wilson (the prosecutor in the state criminal proceedings against petitioner and Jackson) at the postconviction evidentiary hearing, finding such more credible than co-defendant Jackson's testimony at that hearing.  Also significant was the state court's finding that Jackson's sworn taped statement to Mr. Wilson (in the presence of Mr. Mercer) after petitioner's trial and prior to Jackson's plea and sentencing, was more credible than Jackson's testimony at the evidentiary hearing and was more consistent with the evidence presented at petitioner's trial.

Properly deferring to the state court's factual findings, which are reasonable, the undersigned finds petitioner has not demonstrated the state court unreasonably applied *Strickland* in denying his ineffective assistance claim.  Petitioner alleges co-defendant Jackson would have testified at petitioner's trial that petitioner had nothing

to do with the drug sale to the undercover officer. When Jackson testified at the postconviction evidentiary hearing that he was available to testify at petitioner's trial and would have testified truthfully that petitioner was not involved with the drug transaction, the state court disbelieved him. Both the prosecutor and Jackson's counsel testified credibly that Jackson told them in a voluntary and sworn recorded statement that although the drugs belonged to Jackson, petitioner retrieved the drugs from the car and gave them to Jackson, and Jackson then gave them to the undercover officer. Additionally, Jackson's counsel testified credibly that Jackson told him, independent of Jackson's statement to the prosecutor, that petitioner participated in the drug sale by retrieving the "dope" from the car and handing it to Jackson. (Ex. U, pp. 24-25). This description of the drug deal was also consistent with the undercover officer's testimony that petitioner retrieved a pill bottle containing the drugs from the car and handed it to Jackson. (Ex. B, pp. 29-31). Petitioner failed to present the state court with credible evidence that Jackson probably would have provided truthful exculpatory testimony had Mr. Boothe called him to testify at petitioner's trial.

Moreover, the evidence demonstrates that had Mr. Boothe contacted Jackson's counsel "to get his consent" for Jackson to testify, Boothe's attempt would not have been successful. Mr. Mercer (Jackson's criminal attorney) testified that he would "absolutely not" have consented to Mr. Jackson testifying at petitioner's trial. (Ex. U, pp. 25-26).

The state courts did not err at all, much less "so transparently that no fairminded jurist could agree with that court's decision." *Bobby v. Dixon*, — U.S. —, 132 S. Ct. 26, 27, 181 L. Ed. 2d 328 (2011). The state court's rejection of petitioner's

claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground One.

<u>Ground Two</u>      <u>"Trial counsel provided ineffective assistance by falling asleep during trial."</u>  (Doc. 1, p. 7).

Petitioner alleges he repeatedly had to wake defense counsel Boothe during trial. (Doc. 1, p. 7).  Petitioner further alleges Lieutenant William "Sonny" Coburn, a bailiff, provided a sworn affidavit stating he witnessed defense counsel sleeping during trial.  (*Id.*).  Petitioner alleges two other witnesses – Judy Duncan, a court reporter, and Shelly McCormick, a court clerk – would also testify that they saw counsel sleeping during portions of the trial.  (*Id.*; Doc. 18, p. 8).  Petitioner alleges counsel's inattention or slumber prejudiced him, because he effectively had no counsel during those portions of the trial.  (Doc. 1 at 7).  Petitioner asserts he presented this claim to the state courts in his Rule 3.850 motion.  (*Id.*).

Respondent concedes petitioner exhausted this claim.  (Doc. 14, p. 47). Respondent asserts petitioner is not entitled to federal habeas relief, because the state courts' adjudication of the claim was not based on an unreasonable determination of the facts, nor was it contrary to, or an unreasonable application of, clearly established federal law.  (*Id.*, pp. 47-49).

Petitioner's postconviction counsel presented this issue as Ground Three of petitioner's second amended Rule 3.850 motion, where he alleged defense counsel was sleeping during portions of direct testimony of the State's witnesses and was thus unable to effectively cross-examine them.  (Ex. P, pp. 10-11).  The state circuit court denied relief as follows:

> In Ground Three, Defendant alleges that counsel was ineffective when he fell asleep during the trial.  Specifically, Defendant claims that

counsel slept through portions of the trial and was mentally not capable or available to defend the Defendant.  Further, Defendant articulates that had Mr. Boothe been alert and awake, he would have been able to effectively cross examine the witnesses and the outcome would have been different.  Defendant's allegation that counsel was ineffective is conclusory.  *See Kennedy, supra*.  Further, Defendant fails to satisfy either prong of *Strickland*.  Although a trial court in its discretion may grant more than one opportunity to amend an insufficient claim, *Spera* does not mandate repeated opportunities.  *See Nelson v. State*, 977 So. 2d 710 (Fla. 1st DCA 2008).  Therefore, Defendant's claim is denied.

Despite the foregoing, Defendant's claim is refuted by the attached record.  Throughout the Defendant's trial, counsel objected during witness testimony (*See* attached Trial Transcript at pp. 18, 20, 31-32, 33, 36, 40-41, 79); counsel appeared at side bar conferences with the State and the trial judge (*See Id.* at 16-17, 32, 63-64, 97-98); counsel stated on the record that the defense did not object to evidence being entered at trial (*See Id.* at 38, 61, 81, 83, 84); counsel provided a detailed argument with supporting case law to the Court for a Motion for Judgment of Acquittal at the end of the State['s] case and renewed said motion at end of the defense's case (*See Id.* at 85-89, 102); counsel presented an opening statement and closing argument to the jury (*See Id.* at 12-14, 118-127); and counsel was alert enough to recognize that one of his witnesses entered the courtroom during the trial and informed the Court immediately (*See Id.* at 25-26, 64-66).  Further, counsel made yet another motion for judgment of acquittal after the jury's verdict based upon State's witness, Neva Miller's testimony describing the school that she worked at compared to the school alleged within the jury instructions.  (*See Id.* at 138-144, 21-22).

Finally, counsel cross examined three out of the five State's witnesses and presented three defense witnesses including the Defendant, who provided an explanation for a defense to the charge. Further, counsel cross examined State witnesses, Meredith Ward and Mark Mallory, twice after the State conducted a redirect examination of these particular witnesses.  The two State witnesses that counsel did not cross examine were Frank Snowden and Neva Miller.  Frank Snowden was a professional surveyor and mapper, who produced a map showing

a perimeter that was 1000 feet from the fences around Blountstown Middle School. During his direct testimony, counsel objected three times to this particular witness's testimony trying to limit the State's use of a demonstrative aid to show a map to the jury. (*See Id.* at 15-20). Neva Miller was a principal at Blountstown Middle School, who testified for the State about the location of the school and whether it was in operation on the date alleged in the charging document. (*See Id.* at 21-22). Although counsel neither objected nor cross examined this particular witness, he did listen to her testimony because it was the basis of a later Motion for Judgment of Acquittal that he presented to the court after the jury's verdict. (*See Id.* at 138-144). Based upon the foregoing, Defendant's general assertion that counsel was not capable of effective cross examination of witnesses due to his alleged sleeping during direct testimony is without merit and he fails to establish deficient performance or resulting prejudice. *See Strickland, supra*.

(Ex. Q, pp. 14-15). The First DCA affirmed the decision. (Ex. AA).

Petitioner argues in his reply that the state court failed to make factual findings as to whether counsel was sleeping and, if so, when. (Doc. 18 at 9-10). Petitioner contends in the absence of such findings, the state court 's adjudication is not entitled to deference. (*Id.*). Petitioner additionally argues that counsel's alleged incompetence rose to the level of a constructive denial of counsel; therefore, he need not show prejudice because prejudice is presumed under *United States v. Cronic*, 466 U.S. 648 (1984). (*Id.*).

Petitioner's postconviction counsel specifically alleged that the portions of trial during which defense counsel was sleeping was during direct testimony of the State's witnesses.[5] The state circuit court found as fact that during the State's presentation of its case, defense counsel cross-examined three of the State's five witnesses, objected during testimony of the State's witnesses (including the testimony of the

---

[5]Petitioner did not submit an affidavit of Lieutenant Coburn in the state postconviction proceeding or in this federal proceeding.

State's witnesses whom he did not cross-examine), appeared at side bar conferences with the State and the trial judge, and stated on the record that the defense did not object to evidence being entered at trial.  The court's factual findings are amply supported by the trial transcript. (*See* Ex. B, pp. 15-22, 31-33, 36, 38, 40-41, 42-51, 61, 63-64, 75-81, 83-85).  Further, as demonstrated by the state court's findings regarding defense counsel's actions during the trial, which are supported by the trial transcript, defense counsel fully participated in the trial.  (*See* Ex. B).

Petitioner does not allege any line of cross-examination defense counsel should have pursued but did not, nor does petitioner allege any meritorious objection defense counsel should have made but did not.  Petitioner fails to show that his counsel made any omission, let alone one that rises to the level of deficient performance.

Additionally, the court rejects petitioner's argument that the "presumed prejudice" standard applies.  Petitioner supports his argument by citing Justice Brennan's concurring and dissenting opinion in *Strickland*. (Doc. 18, pp. 9-10).  The portion of Justice Brennan's opinion which petitioner cites is the following footnote:

> Indeed, counsel's incompetence can be so serious that it rises to the level of a constructive denial of counsel which can constitute constitutional error without any showing of prejudice. *See Cronic*, 466 U.S. at 659-660, 104 S. Ct. at 2047; *Javor v. United States*, 724 F.2d 831, 834 (9th Cir. 1984) ("Prejudice is inherent in this case because unconscious or sleeping counsel is equivalent to no counsel at all.").

*Strickland*, 466 U.S. at 703 n.2, 104 S. Ct. 2052 (Brennan J., concurring and dissenting). "Clearly established federal law" for purposes of § 2254(d) includes only the holdings, not the dicta, of the Supreme Court's decisions.  *Howes v. Fields*, 132 S. Ct. 1181, 1187, 182 L. Ed. 2d 17 (2012) (*citing Williams*, 529 U.S. at 412).  "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position

taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193-94, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977). This holding constitutes the "clearly established" law for purposes of § 2254(d)(1). *See Panetti v. Quarterman*, 551 U.S. 930, 949, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).   Other than in this circumstance, "concurring and dissenting opinions of individual Justices" do not qualify as "clearly established" law.   Brian R. Means, Postconviction Remedies, § 29:25 (2014) (*citing Jackson v. Coalter*, 337 F.3d 74, 84 (1st Cir. 2003); *Ross v. Petro*, 515 F.3d 653, 662 (6th Cir. 2008)).

The *Strickland* opinion was a majority opinion; therefore, Justice Brennan's concurring and dissenting opinion in that case is not "clearly established" law for purposes of § 2254.

Petitioner also cites *United States v. Cronic*, 466 U.S. 648 (1984) to support his argument that counsel's alleged sleeping was *per se* prejudicial, citing a footnote of the *Cronic* opinion in which the Court stated:   "The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."   (Doc. 18, pp. 9-10 (*citing Cronic*, 466 U.S. at 659 n.25)).

In *Cronic*, the Supreme Court held that the fact that counsel was given only twenty-five days to prepare for trial, that counsel was young and inexperienced in criminal matters, that the charges were complex, that the charges were grave, and that some witnesses were not easily accessible, were <u>not</u> circumstances so likely to prejudice the accused that a presumption of prejudice was appropriate without inquiry into the actual conduct of the trial; therefore, to make out a claim of ineffective assistance, the defendant was required to point to specific errors of counsel and demonstrate prejudice under the *Strickland* standard.   466 U.S. at 665-66.

The proposition on which petitioner relies in *Cronic* is dicta and does not qualify as "clearly established federal law" for purposes of § 2254.  Moreover, as the state court found and as evidenced by the trial transcript, this is <u>not</u> a case where defense counsel entirely failed to subject the prosecution's case to meaningful adversarial testing.  Defense counsel subjected the prosecution's case to substantial adversarial testing.  Petitioner's argument is not that his counsel failed to oppose the prosecution throughout the trial as a whole, but that his counsel failed to do so at specific points.  The state court correctly and reasonably required petitioner to show prejudice under *Strickland* in order to obtain relief on his ineffective assistance of counsel claim.  *See, e.g., Bell v. Cone*, 535 U.S. 685, 122 S. Ct. 1843, 1851-52, 157 L. Ed. 2d 914 (2002) (holding that petitioner's claim that his counsel was ineffective at sentencing by failing to adduce mitigating evidence and waiving closing argument involved a challenge to specific aspects of counsel's representation, rather than an assertion that counsel had entirely failed to subject the prosecution's case to meaningful adversarial testing, and thus was governed by the *Strickland* standard, not the *Cronic* presumption).

Petitioner failed to demonstrate *Strickland* prejudice, because he failed to show a reasonable probability that the outcome of his trial would have changed had counsel been alert during every moment of the State's presentation of its case.  The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law.  *See, e.g., Thomas v. United States*, 305 F. App'x 587, 589 (11th Cir. 2008) (unpublished) (holding that although counsel's sleeping, even for a short period of time, is inexcusable, defendant failed to establish a reasonable probability the outcome of the trial would have changed had counsel been awake and alert during period of time when defendant

alleged counsel was sleeping; therefore, defendant failed to satisfy *Strickland*).[6]  Nor was the state courts' decision based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three    "Trial counsel was ineffective for not filing a motion for continuance prior to trial."  (Doc. 1, p. 8).

Petitioner alleges defense counsel entered a notice of appearance in the criminal case on March 17, 2008, and trial was set for March 24, 2008.  (Doc. 1, p. 8).  Petitioner alleges this seven-day period was inadequate for counsel to familiarize himself with the case, and counsel even advised petitioner he was not prepared for trial.  (*Id.*).  Petitioner contends counsel's failure to file a motion for continuance forced petitioner to proceed to trial without an adequate defense.  (*Id.*).  Petitioner asserts he presented this claim to the state courts in his Rule 3.850 motion.  (*Id.*, p. 9).

Respondent concedes petitioner exhausted this ground in the state courts. (Doc. 14, p. 49).  Respondent contends petitioner is not entitled to federal habeas relief, because the state court's adjudication of the claim was not based on an unreasonable determination of the facts, nor was it contrary to, or an unreasonable application of, clearly established federal law.  (*Id.* at 50).

Petitioner's postconviction counsel presented this issue as Ground One of petitioner's second amended Rule 3.850 motion.  (Ex. P, pp. 9-10).  There, petitioner alleged defense counsel entered a notice of appearance on March 3, 2008, and failed to request a continuance of trial, which was scheduled for March 24, 2008.  (*Id.*, pp. 10-11).  Petitioner alleged counsel was not, and could not have been, prepared for trial.  (*Id.*, p. 10).  The state circuit court rejected the claim as follows:

---

[6]The court cites unpublished opinions of the Eleventh Circuit only as persuasive authority and recognizes that they are not considered binding precedent.  *See* 11th Cir. R. 36-2.

In Ground One, Defendant alleges that counsel, Dennis Boothe, provided ineffective assistance by not requesting a continuance before trial. Specifically, Defendant articulates that he was prejudiced by counsel's failure to request a continuance as the defense attorney was not, and could not have been adequately prepared for trial. Thus, Defendant argues he was denied a right to effective assistance of counsel.

Defendant's allegation that counsel was ineffective is conclusory at best. *See Kennedy v. State*. 54 7 So. 2d 912, 913 (Fla. 1989) ("A defendant may not simply file a motion for post conviction relief containing conclusory allegations that his or her trial [sic] was ineffective and then expect to receive an evidentiary hearing). Further, Defendant fails to satisfy either prong of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Although a trial court in its discretion may grant more than one opportunity to amend an insufficient claim, *Spera* does not mandate repeated opportunities. *See Nelson v. State*, 977 So. 2d 710 (Fla. 1st DCA 2008). Therefore, Defendant's claim is denied.

(Ex. Q, pp. 13-14). The state appellate court affirmed the decision. (*See* Ex. AA).

Petitioner argues in his reply that the state court's decision is not entitled to deference because the court should have presumed prejudice, instead of requiring him to show prejudice under *Strickland*. (Doc. 18, p. 11). Petitioner again relies on *Cronic*. (*Id.*).

No decision of the Supreme Court, even *Cronic*, suggests that the Florida state courts unreasonably applied federal law to petitioner's claim. As discussed *supra*, the Supreme Court in *Cronic* deemed the following circumstances insufficient to warrant a presumption of ineffectiveness: the defendant and two associates were indicted on mail fraud charges involving the transfer of over $9,400,000 in checks between banks in Tampa, Florida and Norman, Oklahoma during a 4-month period in 1975; shortly before the scheduled trial date, Cronic's retained counsel withdrew; the court appointed a young lawyer with a real estate practice to represent Cronic, but allowed

counsel only twenty-five days for pretrial preparation even though it had taken the Government over four and one-half years to investigate the case, and even though the case involved reviewing thousands of documents; Cronic's two co-defendants agreed to testify for the Government; Cronic was convicted on eleven of the thirteen counts in the indictment and received a 25-year sentence. *Id.* at 466 U.S. at 649-50.

The circumstances of petitioner's case do not rise nearly to the level of those evident in *Cronic*, much less those warranting a presumption of prejudice. Mr. Boothe had been practicing law for over fifteen years at the time of petitioner's trial. (*See* Ex. Q, p. 16). Petitioner was charged with only one count, and it was a simple charge of sale or delivery of cocaine within 1000 feet of a school. (Ex. A). The State filed the charge in January of 2008, and petitioner went to trial less than three months later, on March 24, 2008. The evidence was straightforward and uncomplicated, and did not involve extensive investigation. The State's evidence included testimony of a land surveyor (regarding the distance between the controlled buy and the Blountstown Middle School), the principal of Blountstown Middle School (regarding the fact that the school was operating at the time of the controlled buy), two investigators with the local sheriff's office (one who actually participated in the controlled buy, and the other who participated behind the scenes), a crime laboratory analyst (regarding the results of chemical testing of the substance involved in the controlled buy), and an audiotape of the buy.

The fact that defense counsel filed a notice of appearance shortly before trial is not, standing alone, a circumstance so likely to prejudice the accused that a presumption of prejudice is appropriate. Thus, to show he received ineffective assistance of counsel based on counsel's failure to request a continuance, petitioner

must point to specific errors of counsel and demonstrate he suffered prejudice under *Strickland*.

Petitioner made no such showing of actual ineffectiveness.  Petitioner made a mere conclusory allegation that counsel "was not, and could not have been adequately prepared for trial" (Ex. P, p. 10), and did not identify any specific error or omission of counsel.  This was despite having the benefit of postconviction counsel and two opportunities to amend.  Further, petitioner failed to show a reasonable probability his trial would have resulted differently had counsel requested a continuance.

The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Three.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Julie L. Jones has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Mathew Lamont Speights*, Calhoun County, Florida, Circuit Court Case Number 08-CF-12, be DENIED, and the clerk be directed to close the file.

2.   That a certificate of appealability be DENIED.

At Pensacola, Florida this 26th day of February, 2015.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).